UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

NAPOLEAN WATKINS,

        Plaintiff,

        Case No. 1:19-cv-797

v.

        Honorable Paul L. Maloney

K. MARTIN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility and the Marquette Branch Prison (MBP) in

Marquette, Marquette County, Michigan, the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan, and the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.

Plaintiff sues Case Manager K. Martin, Psychiatrist Esmaeil Emami, Psychologist Mark Fox, mental health professional Meghan McGillis, Psychologist J. Guastella, Psychiatrist Richard Myers, Psychiatrist Unknown Meaden, Psychologist Unknown Harris, Unknown Parties employed by Corrections Mental Health, and Mental Health Supervisor Unknown Maranka.

Plaintiff alleges that in 2014, while he was confined at DRF, he was placed on Effexor. Plaintiff states that he has bipolar disorder and that being on Effexor caused him to become stuck in a manic state for five years, until he was finally removed from the Effexor in July of 2019. Plaintiff states that while in a manic state, he is extremely aggressive, violent, impulsive, and volatile. Plaintiff suffers from psychotic episodes when he is stressed and aggravated. Plaintiff further states that for the last three years that he was taking Effexor, he was on a dose that exceeded the maximum recommended dose.

Plaintiff contends that because of the medication he was taking, he received numerous misconduct tickets. Plaintiff states that every time he had a hearing, the mental health supervisor at each prison failed to advocate for him and denied that Plaintiff's mental health had anything to do with his behavior. Plaintiff asserts that the Effexor immediately caused a radical change in his behavior and that the failure to remove him from the drug resulted in him receiving between 70 and 80 misconduct tickets between 2014 and 2019. In addition, Plaintiff has been labeled a behavior problem. Finally, Plaintiff states that while on Effexor, he did not have an appetite and lost a significant amount of weight, with his weight dropping to as low as 138 pounds.

Plaintiff states that Defendants violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks to have his misconduct record cleared of all tickets he received while on Effexor, $100 a day for the time he was on loss of privileges or in segregation, $250,000 in damages for pain and suffering, and an extra tray for each meal to compensate for his lack of appetite while on Effexor.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff states that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). This includes medically necessary mental health treatment. *Id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied

4

"[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this case, Plaintiff asserts that the medication he was prescribed, Effexor, caused him to engage in violent and disruptive behavior. The Court will assume for the purpose of this analysis that Plaintiff's bipolar disorder constitutes a serious medical condition that is "sufficiently

6

serious" to implicate the Eighth Amendment. However, Plaintiff fails to allege facts showing that

Defendants were deliberately indifferent to his serious medical need.

> As an initial matter, the prescribing of drugs by a physician which causes side effects does not constitute deliberate indifference. *Walker v. Abdellatif*, No. 1:07CV1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (doctor's choice to continue medication for Chron's disease even though medication may cause allergic reaction involved the exercise of the doctor's medical judgment and did not implicate a federal constitutional violation) (citing among authority *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004)); *Christensen v. United States*, No. CIV. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) ("[Doctor's] decision to continue [prisoner's] prescription for [aspirin] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects. Such balancing of competing goals is one of medical judgment, and is the antithesis of deliberate indifference to [prisoner's] medical care.") (citation omitted).

*Mason v. Eddy*, No. 1:18 CV 2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019).

Plaintiff in this case fails to allege facts showing that any of the named Defendants were aware that Effexor was causing Plaintiff to become manic. In fact, Plaintiff's allegations indicate that Defendants did not believe that his behavior was related to his medical condition and expressed this belief when asked if Plaintiff's mental health played a role in his many misconduct tickets. (ECF No. 1, PageID.5.) Plaintiff attaches a step III grievance response to his complaint, which states:

> Grievant alleges Mental Health staff are not properly completing the CSJ-331 Misconduct Sanction Assessment forms, indicating he has a mental illness and is not responsible for his actions.
>
> All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. As noted, the grievant may be followed within Mental Health/Outpatient Mental Health Program, however, disagreement with clinical judg[ ]ment regarding your ability to conduct yourself within the institution is not support for the allegations within this grievance.

(ECF No. 1-1, PageID.10.) It is clear from Plaintiff's complaint and the attachments thereto that

Defendants were not deliberately indifferent to Plaintiff's serious medical condition, or to a serious

risk of harm resulting from placing him on Effexor. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed for lack of merit.

## IV. Fourteenth Amendment

Plaintiff states that Defendants violated his due process rights under the Fourteenth Amendment when they punished him for behavior caused by his medication, and when Defendants failed to advocate for him in relation to his numerous misconduct tickets. A prisoner's ability to challenge a prison misconduct conviction under the Due Process Clause depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

To the extent a disciplinary sanction affects the duration of the prisoner's sentence, he is entitled to the protections of due process. *Id.* But, no sanction that might have followed a finding of guilt on the misconducts here would have affected the duration of Plaintiff's sentence. Plaintiff committed his crimes after December 15, 1998; therefore, he is not eligible for "good time" credits nor is he eligible for disciplinary credits that, possibly, could impact the duration of his sentence. Instead, Plaintiff is a prisoner "subject to disciplinary time." Mich. Comp. Laws §§ 800.33, 800.34; MDOC Policy Directive 03.01.105 (eff. July 10, 2017).

Disciplinary time accumulates for major misconduct convictions. Mich. Comp. Laws § 800.34; MDOC Policy Directive 03.01.105 (Eff. July 10, 2017). But, such an accumulation would not affect the duration of Plaintiff's sentence as contemplated by *Sandin*. In *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system that resulted in the accumulation of disciplinary time does not affect a

prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *see also Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Thus, even if Plaintiff accumulated disciplinary time for any misconduct convictions, that sanction would not warrant due process protections.

A prison disciplinary sanction may also implicate the protections of due process if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484. The most severe sanctions that Plaintiff might have faced were up to 10 days in punitive segregation or up to 30 days' toplock and up to 30 days' loss of privileges. MDOC Policy Directive 03.03.105, Attachment D (Eff. July 1, 2018). Such penalties do not rise to the level of an atypical and significant hardship. Indeed, the *Sandin* court concluded that thirty days in segregation, a far more restrictive penalty, was not so severe a sanction that due process protection was warranted. *Id*. at 484-86; *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) ("14-day loss of privileges did not deprive him of a protected liberty interest . . . ."); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("The sanction imposed for Alexander's misconduct charge—thirty days' loss of privileges—did not implicate a protected liberty interest . . . ."); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan 24, 2017) ("[T]hirty-day loss of privileges . . . does not amount to an 'atypical and significant hardship.'"). The Sixth Circuit routinely has held that misconduct convictions that do not impact the duration of a prisoner's sentence are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram*, 94 F. App'x at 273; *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Because Plaintiff was not deprived of any protected liberty interest, he has failed to state a claim for violation of his due process rights.

### V.     Motion to amend

Plaintiff has moved to amend his complaint. (ECF No. 8.) Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend once as a matter of course before a responsive pleading is served. The original complaint in the instant case has not yet been served on Defendants, much less been subject to a responsive pleading. As a consequence, Plaintiff may file an amended complaint as a matter of right.

Plaintiff has not supplied a proposed amended complaint. Instead, he identifies the proposed amendment in his motion: Plaintiff wants "to change the capacity in which [he is] suing the defendants from official to both official and in their personal capacities." (Mot., ECF No. 8, PageID.54.) The proposed amendment does not impact the deficiencies identified above. The Court will grant Plaintiff's motion to amend. The Court has conducted the preliminary review of Plaintiff's claims as if the amendment were made.

### VI.     Pending motion

Plaintiff also moves for the appointment of counsel. (ECF No. 2.) For the reasons, set forth above, Plaintiff's pending motion for appointment of counsel (ECF No. 2) will be denied as moot.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.

§ 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated: January 7, 2020 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge